Filed 3/20/25  P. v. Sanders CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B333626 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA102299) |
| v. | |
| EDWARD ANTHONY SANDERS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed with directions.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven E. Mercer and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

In a resentencing proceeding under Penal Code section 1172.75,[1] the superior court reduced defendant Edward Anthony Sanders's aggregate sentence from 22 years eight months to 18 years four months. Sanders committed a series of armed robberies in 2013, and his original sentence included a now-invalid one-year enhancement under section 667.5, subdivision (b) for a prior prison term. At the resentencing hearing, the court struck that enhancement, as well as a three-year four-month firearm enhancement (§ 12022.53, subd. (b)).

Sanders contends we must remand the case for another resentencing hearing in light of *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), in which the Supreme Court clarified the standards for striking or imposing sentence enhancements. Because the superior court resentenced him before *Walker*, Sanders argues that the court did not understand the scope of its discretion, and he is entitled to a new hearing so that the court may determine whether to strike additional enhancements from his sentence. We disagree. Nothing in *Walker* altered the scope of the court's discretion in a way that would benefit Sanders. We agree with Sanders, however, that the abstract of judgment must be amended to reflect the correct number of presentence credits. We affirm the judgment so modified.

**FACTUAL BACKGROUND AND PRIOR PROCEEDINGS**

Sanders committed three robberies of gas stations and convenience stores in Diamond Bar and Walnut in the course of four days in June 2013. On each occasion, Sanders was holding a

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

gun, and in two of the three robberies, he pointed the gun at a store employee. Los Angeles County Sheriff's Department deputies apprehended Sanders as he was leaving the scene of the final robbery, searched him, and found a loaded handgun along with the money stolen from the register. The handgun turned out to have been stolen, and Sanders was a convicted felon.

The People charged Sanders with three counts of armed robbery (§ 211), three counts of possession of a firearm by a felon (§ 29800, subd. (a)(1)), one count of carrying a stolen, loaded firearm in public (§ 25850, subds. (a), (c)(2)), and one count of receiving stolen property (§ 496, subd. (a)). In addition, the People charged him with one count of kidnapping for purposes of robbery (§ 209, subd. (b)(1)), based on an allegation that during one of the robberies, the store's clerk was outside, and Sanders motioned him to enter the store to open the register. Finally, the people alleged that Sanders used a firearm in the kidnapping and in all three robberies (§ 12022.53, subd. (b)) and that he had served a prison term for a prior offense (§ 667.5, subd. (b)).

The case proceeded to a jury trial, and at the close of the prosecution's case, the court granted Sanders's motion for acquittal on the kidnapping charge for insufficient evidence. (See § 1118.1.) Sanders then pleaded no contest to the remaining charges in an open plea.

The court imposed the middle term of three years for one of the robbery counts, plus 10 years for the firearm enhancement. In addition, the court imposed a one-year enhancement for a prior prison term under section 667.5, subdivision (b). For the two remaining robberies, the court imposed consecutive sentences of one-third the middle term, or one year, plus three years four months for each of the two firearm enhancements. The court

3

stayed the sentence on the weapon possession and receipt of stolen property offenses pursuant to section 654. This yielded an aggregate sentence of 22 years eight months. In 2016, Sanders filed a petition under section 1170.18 to reduce his conviction for receiving stolen property to a misdemeanor. The superior court granted the petition, but because the court had originally stayed the sentence for that offense, the change did not reduce the aggregate length of his sentence.

In 2019, the Legislature enacted Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590), which eliminated the one-year enhancement for prior prison terms under section 667.5, subdivision (b) except in the case of defendants convicted of sexually violent offenses. Sanders's prior prison term was not for a sexually violent offense. Two years later, the Legislature created a new law declaring all existing enhancements imposed under section 667.5, subdivision (b) invalid except when the enhancements were based on prior sexually violent offenses and creating a mechanism for eliminating the invalid enhancements from sentences of defendants in custody. (Sen. Bill No. 483 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 728).)

In 2022, the Department of Corrections and Rehabilitation (CDCR) placed Sanders on a list of inmates potentially eligible for resentencing under the new law. Sanders filed a petition in support of his resentencing, which included an insight statement taking responsibility for his crimes and explaining how he had sought to improve his life in prison. He also submitted documentation of his participation in several rehabilitation programs, a plan for life after his release, and letters of support from several family members. The People opposed granting any relief apart from striking the enhancement under section 667.5,

4

subdivision (b), citing Sanders's conviction for several offenses between 2000 and 2009, including one count of burglary, as well as six rules violations while in prison, the most serious of which was for participation in a riot.

At the resentencing hearing, the court stated that it was "impressed with [Sanders's] postconviction behavior while in the state prison" and decided to reduce his sentence beyond merely striking the invalid enhancement under section 667.5, subdivision (b). Accordingly, the court struck one of the three-year four-month firearm enhancements because Sanders's "use of a firearm . . . was limited to brandishing only. He did not fire it, much less injure anyone with the firearm. His motivation behind . . . the string of robberies—and the court finds it to be sincere—was . . . to provide necessities for his family, was not for greedy purposes, in other words." In addition, the court cited Sanders's "willingness . . . to take responsibility for his actions in entering the open plea rather than forcing a [continuing] trial and certainly, as the court mentioned, his postconviction efforts to rehabilitate himself."

The court "acknowledge[d] its full discretion to strike or dismiss" the remaining firearm enhancements but "elect[ed] not to" strike the 10-year enhancement on the principal term "because of the nature of the robberies that were facilitated with a firearm." The court also decided not to strike the final three-year four-month enhancement because the gun the police found in Sanders's possession was "loaded with a live round in the firing chamber, meaning that the defendant was prepared to use lethal force if it was necessary; so the mere preparation in using the weapon to facilitate these robberies indicates a dangerousness to society."

5

The court left the remaining terms of Sanders's sentence unchanged. With the elimination of the three-year four-month firearm enhancement and the one-year prior prison term enhancement, Sanders's aggregate sentence was reduced from 22 years eight months to 18 years four months.

## DISCUSSION

### A.    Background on Resentencing Under Section 1172.75

Section 1172.75 states that when a court resentences a defendant under the statute, "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).) "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402; accord, *People v. Christianson* (2023) 97 Cal.App.5th 300, 314-315, review granted Feb. 21, 2024, S283189.) Thus, in a case such as this, "the resentencing court has jurisdiction to modify *every* aspect of the sentence, and not just the portion subjected to the recall." (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

Of particular relevance in this case is the superior court's power, under section 1385, subdivision (a), "in furtherance of justice, [to] order an action to be dismissed." In the case of sentence enhancements, this includes the "authority to strike the additional punishment or to strike the enhancement altogether." (*People v. Barboza* (2021) 68 Cal.App.5th 955, 965.) Subdivision (c) of section 1385 directs courts how to apply their discretion to strike enhancements. It instructs them to "consider and afford great weight to evidence offered by the defendant to prove that

6

any of [several] mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."[2] (*Id.*, subd. (c)(2).)

The statute lists nine potential mitigating factors: "(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of [s]ection 745.

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

"(D) The current offense is connected to mental illness.

"(E) The current offense is connected to prior victimization or childhood trauma.

"(F) The current offense is not a violent felony as defined in subdivision (c) of [s]ection 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal

---

[2] The statute was amended to add the requirement to consider these mitigating factors as a part of Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) which became effective January 1, 2022. (See *People v. Anderson* (2023) 88 Cal.App.5th 233, 238.) Sanders's sentencing hearing took place in 2023, when the new law was in effect.

convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H) The enhancement is based on a prior conviction that is over five years old.

"(I) Though a firearm was used in the current offense, it was inoperable or unloaded."  (§ 1385, subd. (c)(2)(A)-(I).)

We review a trial court's sentencing decisions, including the decision whether to strike an enhancement under section 1385, for abuse of discretion.  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298, citing *People v. Carmony* (2004) 33 Cal.4th 367, 371.)

## B.    Remand for a New Resentencing Hearing Is Not Required in Light of *Walker*

Sanders does not allege that the superior court's decision to impose a sentence of 18 years four months was substantively unreasonable.  Instead, he claims we must remand for a new resentencing hearing because the prior hearing took place before the Supreme Court released its opinion in *Walker*, which clarified the standard courts must apply when deciding whether to strike enhancements pursuant to section 1385.  According to Sanders, "the record does not conclusively establish that the trial court would have imposed the same sentence under properly framed discretion."  We disagree.  Nothing in *Walker* altered the scope of the superior court's discretion in a way that could potentially lead to a reduced sentence for Sanders.

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's

8

record.' [Citation.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Under this rule, when the Legislature enacts a new law that alters sentencing standards after a defendant has been sentenced but before the case has become final, we must remand for resentencing " 'unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Salazar* (2023) 15 Cal.5th 416, 431, quoting *Gutierrez*, *supra*, at p. 1391.)

The same rule may apply when sentencing standards change as a result of a judicial decision. Thus, in *People v. Thompson* (2022) 83 Cal.App.5th 69, the court held that a defendant was entitled to a new sentencing hearing in light of the Supreme Court's decision in *People v. Tirado* (2022) 12 Cal.5th 688, which gave trial courts previously unrecognized authority to impose uncharged lesser sentence enhancements in place of the enhancements the jury found true. (*Thompson*, *supra*, at pp. 114-116.)

It does not follow, however, that every Supreme Court case clarifying the application of a sentencing law requires a remand for resentencing of every pending case where the defendant was sentenced prior to the court's decision. At the time of Sanders's resentencing hearing in August 2023, Senate Bill No. 81, which created the requirement to "afford great weight to evidence . . . of . . . mitigating circumstances" when deciding whether to strike sentence enhancements (§ 1385, subd. (c)(2)) was already in effect. (Stats. 2021, ch. 721.) The Courts of Appeal had disagreed as to how to interpret this provision. Our colleagues in Division Two of the Second District held that "section 1385's mandate to 'afford great weight' to mitigating circumstances erects a rebuttable presumption that obligates a court to dismiss the

enhancement unless the court finds that dismissal of that enhancement . . . would endanger public safety." (*People v. Walker* (2022) 86 Cal.App.5th 386, 391.) In *People v. Ortiz* (2023) 87 Cal.App.5th 1087, the Sixth District disagreed, holding that "the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement. To be sure, the Legislature has invested the enumerated mitigating circumstances with great weight, both in the trial court's evaluation of the defendant's evidence in the first instance and in the trial court's consideration of the mitigating circumstance once established. But this does not preclude a trial court from determining that countervailing factors—other than the likelihood of physical or other serious danger to others—may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice." (*Id.* at p. 1098.)

One year after Sanders was resentenced, the Supreme Court sided with *Ortiz*, holding "that a trial court must 'engage[ ] in a holistic balancing with *special emphasis* on the enumerated mitigating factors,' in which the mitigating factors weigh 'strongly in favor of . . . dismissal' " of an enhancement, but with no formal presumption for dismissing enhancements. (*Walker*, *supra*, 16 Cal.5th at p. 1036, quoting *People v. Ortiz*, *supra*, 87 Cal.App.5th at p. 1096.)

Both before and after *Walker*, appellate courts agreed that the amended section 1385 required sentencing courts to show a preference for striking enhancements when mitigating factors are present. The disagreement was only as to the degree of that preference. (See *Walker*, *supra*, 16 Cal.5th at p. 1035.) There is no indication in the record that the parties or the superior court

10

at Sanders's resentencing hearing were confused about how to apply section 1385, much less that the court's interpretation of the statutorily required preference was at odds with the Supreme Court's subsequent decision in *Walker*.

Even if we assume some confusion existed about the degree of preference under section 1385 for striking enhancements when the court resentenced Sanders, it was immaterial. Of the two interpretations before the Supreme Court, the defendant in *Walker* preferred the one that viewed the statute as creating "a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Walker*, *supra*, 16 Cal.5th at p. 1033.) The Supreme Court instead chose an interpretation that allows for the possibility of "credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id.* at p. 1038, quoting *People v. Ortiz*, *supra*, 87 Cal.App.5th at p. 1098.) In other words, to the extent *Walker* altered the scope of courts' sentencing discretion, it served only to give courts greater discretion *not* to strike enhancements.

We do not see how it could benefit Sanders to require the superior court to conduct a new resentencing hearing with instructions *not* to impose a presumption in favor of striking sentence enhancements. In these circumstances, a remand for additional resentencing is not required because "it would be idle to do so." (*People v. Salazar*, *supra*, 15 Cal.5th at p. 431.)

C.    **The Record Must be Corrected to Reflect the Correct Number of Presentence Credits**

Sanders argues the superior court miscalculated the number of days he served from his original 2014 sentencing

11

hearing to the 2023 resentencing hearing.  The People agree, as do we.  At the resentencing hearing on August 2, 2023, the court stated that Sanders had served 3,262 days in prison from the date of his original sentencing on August 26, 2014, not counting credit for good behavior.  When added to the 493 days of credits he accumulated prior to his original sentencing in 2014, this yielded a total of 3,755 credits, which is reflected on the amended abstract of judgment.  In fact, there were 3,264 days between August 26, 2014 and August 2, 2023, and Sanders was entitled to two more credits.  An error in the calculation of credits "is subject to correction whenever brought to the attention of a court that has jurisdiction." (*People v. Boyd* (2024) 103 Cal.App.5th 56, 65.) We will therefore order the superior court to amend the abstract of judgment to reflect the correct figure.

## DISPOSITION

The order sentencing Sanders is affirmed.  On remand, the superior court is directed to correct the number of presentence credits, to prepare an amended abstract of judgment, and to forward a certified copy of the amended abstract of judgment to CDCR.

NOT TO BE PUBLISHED


WEINGART, J.

We concur:



ROTHSCHILD, P. J.          M. KIM, J.


12